Francis Eaton and Winifred Eaton v. Commissioner. Francis Eaton v. Commissioner.
Eaton v. Commissioner
Docket Nos. 58118, 59911. T.M. Memo. 1958-13.
United States Tax Court
T.C. Memo 1958-13; 1958 Tax Ct. Memo LEXIS 214; 17 T.C.M. (CCH) 60; T.C.M. (RIA) 58013; January 31, 1958
*214 Morris M. Grupp, Esq., Mills Tower Building, San Francisco, Calif., and Leon Schiller, Esq., for the petitioners. Charles W. Nyquist, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined deficiencies in the income tax of the petitioners as follows: Docket
Petitioner
No.
Year
Deficiency
Francis Eaton and
Winifred Eaton
58118
1951
$117.10
Francis Eaton
59911
1952
363.87
Issues presented for determination are the correctness of the respondent's action (1) in determining that deductions of $485 and $89 taken for 1951 as a business loss and as a casualty loss, respectively, represented personal expenses and (2) in disallowing for 1952 for lack of substantiation deductions, totaling $1,129, taken as rental equipment expenses and deductions, totaling $854.66, taken as contributions, interest, taxes, casualty loss and miscellaneous. Findings of Fact All facts that have been stipulated are found accordingly. The petitioners Francis Eaton and Winifred Eaton were in 1951 husband and wife with residence at Mendocino, California. Their joint Federal income tax return for *215 that year was filed with the collector for the first district of California. Petitioner Francis Eaton was in 1952 and is now a resident of Mendocino, California. His Federal income tax return for that year was filed with the collector for the first district of California. Since petitioner Winifred Eaton is joined here only by virtue of a joint income tax return having been filed for 1951, the term "petitioner" will hereinafter be used with reference to Francis Eaton. During 1951 and 1952 the petitioner was employed as a mechanic by Donald C. Philbrick, Comptche, California. Philbrick operated a mill at Comptche where he cut into lumber the logs he obtained from logging operations that he conducted in woods in the general area of Comptche. The petitioner's duties consisted of those of a general mechanic at a lumber mill. He also repaired all gasoline-powered equipment used at the mill and in the woods, including trucks which operated between the woods and the mill. He acted as assistant mechanic in the repair of all diesel powered equipment used in the mill and in the woods. When repair parts for trucks were not on hand at the mill, the petitioner traveled variously to Fort Bragg, *216 Mendocino, Ukiah, or Willits, California, to obtain them. On occasions when spare repair parts for the mill were not on hand, the petitioner made trips to obtain them. For portions of the time in 1951 and 1952 the petitioner worked 5 days a week, for other portions he worked 6 days and on a number of occasions worked 7 days. For a substantial portion of the weekdays he worked overtime at the end of the day. The petitioner was required by the terms of his employment to provide his own tools and equipment which he used in his employment. These weighed several hundred pounds and were transported in two tool boxes attached to a small truck he was required to provide. Philbrick did not provide petitioner a place at the mill or elsewhere for leaving his tools at night and, as a consequence, he each day transported the tools back and forth on the truck between his home and his work. On those occasions when the petitioner worked at different places during the day he used the truck to transport his tools. The petitioner also used the truck for making trips to obtain spare repair parts. The petitioner provided the oil and gasoline used in his truck. He also provided caulk boots and gloves *217 which he used in his work. The distance traveled by petitioner in going from his home at Mendocino to Philbrick's lumber mill at Comptche was approximately 23 miles. He spent a substantial portion of his working time in making repairs on equipment that was in the woods or elsewhere away from the mill. This required driving his truck distances of up to 10 miles away from the mill. When he made trips for spare repair parts, he traveled to points up to 25 miles or more distant from the mill. Living accommodations for petitioner and his wife were not available at Comptche, or closer thereto than Mendocino. In his work for Philbrick the petitioner used a model A Ford truck until about November 15, 1951. On or about that date he traded in that truck and acquired, at a cost of $895, a 1949 model Chevrolet truck (half-ton pickup) which he used thereafter through 1952 in his work. In 1946 the petitioner acquired a 1940 model DeSoto which he has continued to own and which he used for personal purposes during 1951 and 1952. In addition to the above-mentioned use of his trucks in 1951 and 1952, the petitioner, as a convenience to two other men who lived in Mendocino and who worked for *218 Philbrick, carried them in his truck as he went to and from work at Philbrick's lumber mill. Each of the men paid petitioner 50 cents a day for the days they rode with him. The petitioner did not keep any record of the amounts so received. During 1951 and 1952 the petitioner did not engage in the business of transportation for profit. Nor did he in either of those years rent either of his trucks, or his tools and equipment to anyone. During those years he kept possession of his trucks and his tools and shipment at all times. In "Schedule C Summary. - Profit (or Loss) from Business or Profession" of their income tax return for 1951, the petitioners reported a loss of $485 which they deducted in computing their taxable income for the year. In the schedule an amount of $250, representing the amount the petitioner estimated he had received during the year from persons who had ridden to and from work with him during the year, was shown as income received from the "Transportation" business. From that amount the petitioners deducted $735 as "Auto Expense," computed on the basis of 10,500 miles at 7 cents per mile. In the schedule of their return for deducting casualty losses, the petitioners *219 deducted $89 with the explanation "Casualty Insurance." In determining the deficiency for 1951 the respondent determined that the foregoing deductions $485of and $89, respectively, represented personal expenses and accordingly disallowed them. In driving his truck to and from his work at Philbrick's lumber mill in 1951, the petitioner incurred expenses of $735 in the operation of the truck. Of that amount, $367.50 represented an ordinary and necessary expense of the petitioner's trade or business. The petitioner carried casualty insurance on the truck and, on account thereof, incurred in his trade or business an ordinary and necessary expense of $20. In "Schedule F. - Income from Rents and Royalties" of his income tax return for 1952, the petitioner reported a loss of $879 which he deducted in computing his taxable income for that year. In the schedule an amount of $250, representing the amount the petitioner estimated he had received during the year from persons who had ridden to and from work with him during the year, was shown as rent received. From that amount the petitioner deducted the following items as attributable to rental income: Depreciation on "Pick-up Trucks"
(2-year life)
$ 447.50
Repairs to truck
351.50
Other expenses in operating truck
330.00
Total
$1,129.00
*220 In determining the deficiency for 1952 the respondent disallowed the foregoing deductions, totaling $1,129, for lack of substantiation. Approximately two-thirds of the petitioner's use of his truck during 1952 was in his trade or business. Deductible depreciation of the truck amounted to $298.50. Deductible expenses for repairs to the truck amounted to $206.50. Deductible expenses for oil and gasoline used in the truck, including California gasoline tax, amounted to $234. The petitioner also took deductions as follows in his income tax return for 1952: Contributions
March of Dimes, Christmas &
Easter Seals
$ 15.00
Firemen's Fund
20.00
Red Cross, Boy Scouts, Veter-
ans
35.00
Churches and Missions
55.00
$125.00
Interest
Al Bonetts
173.16
Bank of America
75.00
248.16
Taxes
Property tax
42.50
Auto license
21.00
Calif. State Unemployment
Tax
30.00
Calif. State Sales Tax
75.00
Calif. State Gasoline Tax
34.00
202.50
Losses from fire, storm, or casu-
alty, etc.
Casualty insurance
112.00
Accident, May 1952, $50.00 de-
ductible
50.00
162.00
Miscellaneous
Union dues
36.00
Tax Service
15.00
Gloves & Caulk Boots
66.00
117.00
$854.66
*221 The respondent disallowed all of the foregoing deductions for lack of substantiation. During 1952 the petitioner made the following deductible contributions: March of Dimes $5, Red Cross $5, Boy Scouts $5 and churches and missions $10. The petitioner paid to Al Bonetts and the Bank of America deductible interest in the amount of $200. The petitioner paid deductible taxes in the following amounts: real property tax $20, automobile tax $10 and California unemployment tax $10. In an accident during May 1952 the petitioner sustained a casualty loss deductible in the amount of $50. During 1952 the petitioner carried casualty insurance on his truck and, on account thereof, incurred in his trade or business an ordinary and necessary expense of $30. During 1952 the petitioner paid union dues of $36 and paid $66 for gloves and caulk boots which he used in his work. In 1952 the petitioner paid Watkins & Klee $15 for the preparation of his income tax return for 1951. Opinion The petitioners take the position that in the situation presented here it was necessary for petitioner Francis Eaton to use his truck to travel between his home in Mendocino and Philbrick's lumber mill in Comptche where *222 he was employed during 1951 and 1952 and that it was also necessary for him during those years to make on-the-job use of the truck to travel between the mill and the site of Philbrick's logging operations and various other places which his employment by Philbrick required him to travel. The petitioners contend that the use of the truck for such purposes constituted its use in the petitioner's trade or business and caused the depreciation of, the cost of repairs to, the cost of oil and gasoline for, and the cost of casualty insurance on, the truck to be deductible by petitioner as ordinary and necessary business expense. The evidence shows that the petitioner's use of the truck to travel between his home and the lumber mill was for a dual purpose, namely, for commuting between his home and the mill and for the transportation of the tools and equipment used by him in his employment. The evidence also shows that under the terms of his employment by Philbrick he was required to make on-the-job use of the truck when his duties required his presence away from the mill. In , the taxpayer used his automobile to travel between his home and the *223 sites where he worked and to transport tools and equipment used by him in his employment. In that case it was pointed out that it has long been held that commuting expenses are personal expenses and are not deductible as business expenses. It was also held that the rule was the same regardless of the distance commuted and even though public transportation was not available and living accommodations for the taxpayer and his family were not available at or near the place of his employment. Accordingly it was further held that while the portion of the automobile expenses applicable to the taxpayer's commuting was not deductible, the portion of such expenses applicable to the transportation of his tools and equipment was deductible as an ordinary and necessary expense of his trade or business. In accordance with the holdings in the Crowther case, we hold that the portion of the petitioner's truck expenses for 1951 and 1952 which was applicable to his commuting was not deductible but that the portion of the expenses which was applicable to the transportation of his tools and equipment was deductible as an ordinary and necessary expense of his trade or business. Since the pleadings relating *224 to the year 1952 present the additional question as to whether the expenses for petitioner's on-the-job use of the truck were deductible, we further hold that the portion of the truck expenses for that year which was applicable to his on-the-job use of the truck was deductible as an ordinary and necessary expense of petitioner's trade or business. The petitioner did not offer in evidence any books, vouchers, receipts or other records respecting the truck expenses or other items of deductions involved therein. Except for some stipulated facts, the evidence in the proceedings consists only of copies of the petitioner's returns for 1951 and 1952 and his testimony. On direct examination the petitioner indicated that his records were not available because of their destruction by his wife in "a big bonfire" when she left him in 1953. When asked on cross-examination about the bonfire and his records, he stated: "I am just saying it was a fire; I don't know where they are." In our findings of fact we have set out the amounts of the truck expenses which were deductible as ordinary and necessary expenses of the petitioner's trade or business in the respective years. We have also set out *225 the amounts of other items which were otherwise deductible. In making our findings we have given effect to concessions made by respondent on brief as to the amounts of certain items and have applied the rule of , in determining the amounts of other items. In their petitions the petitioners have assigned certain errors and made certain allegations of fact, all of which the respondent has denied in his answer, and on brief have advanced certain contentions challenging the propriety of the administrative policy and procedures employed by the respondent prior to his determination of the deficiencies here involved and challenging the propriety of his motives in making such determination. We have jurisdiction to consider and determine, and have considered and determined in the light of the evidence of record, the correctness of the respondent's determination of the deficiencies here involved. However, we are without jurisdiction to consider and determine the propriety of the administrative policy and procedures the respondent employed prior to making such determination or to consider and determine the propriety of his motives in making *226 such determination. Decisions will be entered under Rule 50.